809 F.2d 502
 16 Soc.Sec.Rep.Ser. 151, Unempl.Ins.Rep. CCH 17,133
Hilbert F. GROSECLOSE, Appellant,
v.
Otis R. BOWEN, Secretary, United States Department of Health
and Human Services, Appellee.
 No. 86-1479.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 11, 1986.
Decided Jan. 15, 1987.
 
 Ernest L. Keathley, Jr., St. Louis, Mo., for appellant.
 Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for appellee.
 Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD,* District Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Hilbert Groseclose appeals from the district court's order granting summary judgment in favor of the Secretary of Health and Human Services. This case involves the recoupment of child's insurance benefits. The Secretary determined that Groseclose's daughter had been overpaid benefits. To recoup the overpayments, the Secretary withheld benefits due Groseclose. The Social Security Act authorizes the Secretary to recoup overpayments from a person who is without fault if recoupment would not be against equity and good conscience. In granting summary judgment for the Secretary, the district court concluded that substantial evidence supported the Secretary's finding that recoupment from Groseclose, who was without fault, would not be against equity and good conscience. On appeal Groseclose contends that the Secretary's interpretation of the phrase "equity and good conscience" is unreasonably narrow, and that recoupment in this case would be inconsistent with a proper interpretation of that phrase. We agree with Groseclose and reverse.
 
 I. BACKGROUND
 
 2
 In September 1975, Groseclose filed applications for retirement insurance benefits and child's insurance benefits. The Social Security Administration determined that the applicants, Groseclose and his minor children, were entitled to benefits commencing in October 1974. In March 1979, however, the Administration notified Groseclose's daughter that she was no longer entitled to child's insurance benefits because she did not meet the requirement of full-time attendance at an educational institution. It was later determined that Groseclose's daughter was enrolled as a full-time student for only two months during the twenty-six month period from October 1976 through November 1978. Consequently, she was overpaid approximately $3,600. Instead of recovering the overpayments from Groseclose's daughter, the Administration sought to recoup the overpayments by withholding retirement insurance benefits due Groseclose.
 
 
 3
 The Social Security Act authorizes the Secretary to recoup overpaid benefits from the person who received the overpayments or from any other person whose wages or income were the basis of the payments to the overpaid person. 42 U.S.C. Sec. 404(a) (1982). The Secretary may not recoup overpayments, however, from "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. Sec. 404(b) (1982).
 
 
 4
 The Act is silent as to the meaning of the phrases "without fault," "defeat the purpose of this subchapter," and "against equity and good conscience." The Act does authorize the Secretary "to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions." 42 U.S.C. Sec. 405(a) (1982). The regulations set forth the Secretary's interpretations of the phrases. A person is at fault if the overpayments were made as a result of his incorrect statement or his failure to furnish material information; the overpaid individual will also be at fault if he knowingly (knew or should have known) accepts an incorrect payment. 20 C.F.R. Sec. 404.507 (1986). Recoupment would defeat the purpose of the subchapter if it would "deprive a person of income required for ordinary and necessary living expenses." Id. Sec. 404.508(a). Recoupment would be against equity and good conscience if an individual, in reliance on the payments, "relinquished a valuable right * * * or changed his or her position for the worse * * * * In reaching such a determination, the individual's financial circumstances are irrelevant." Id. Sec. 404.509.
 
 
 5
 After being notified that the Administration would recoup the overpayments by withholding a portion of his retirement benefits, Groseclose requested and received a prerecoupment hearing. An administrative law judge found that Groseclose was without fault. The overpayments were not the result of an incorrect statement made by Groseclose, nor were they the result of a failure on his part to provide material information. Groseclose chose not to disclose his financial situation. Consequently, the ALJ could not determine whether recoupment would deprive Groseclose of income required for his living expenses. The ALJ found, therefore, that Groseclose failed to prove that recoupment would defeat the purpose of the subchapter. Finally, the ALJ found that recoupment would not be against equity and good conscience. The ALJ noted that Groseclose could not have relied detrimentally on the incorrect payment of benefits because the evidence demonstrated that Groseclose was unaware that his daughter was receiving benefits. Groseclose testified that he could not remember whether his daughter was enrolled in school during the time in question. His daughter did not live at home; she was living out of state at the time. The ALJ concluded that Groseclose did not relinquish a valuable right or change his position for the worse in reliance on the incorrect payments made to his daughter.[1] Consequently, the ALJ held that recoupment was proper in this case.
 
 
 6
 The Appeals Council affirmed and Groseclose sought review in federal district court. The district court granted summary judgment in favor of the Secretary, holding that the Secretary's decision to recoup the overpayments is supported by substantial evidence and that recoupment from a person who is without fault does not violate due process. This appeal followed.
 
 
 7
 On appeal, Groseclose argues that it would be against equity and good conscience to recover the overpayments from him. He did not receive the overpayments and he was not aware that his daughter had received them. In so arguing, Groseclose contends that the Secretary's interpretation of the phrase against equity and good conscience is invalid because it does not include the ordinary meaning of the phrase. Groseclose argues that it would be against the ordinary meaning of equity and good conscience to recoup overpayments from a person who, as in this case, is without fault, who did not receive the payments, and who was not aware that the overpaid person had received the payments. We agree. We hold that recovery in these circumstances would be contrary to a reasonable interpretation of "equity and good conscience."
 
 II. DISCUSSION
 
 8
 We note at the outset that an agency's interpretation of the statute that it is charged with administering is entitled to considerable deference. Department of Social Services v. Bowen, 804 F.2d 1035, 1038 (8th Cir.1986) (citing Young v. Community Nutrition Institute, --- U.S. ----, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959 (1986)). In Young the Supreme Court stated:
 
 
 9
 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.... [A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'
 
 
 10
 Young, 106 S.Ct. at 2364 (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)). The Supreme Court has also stated, however, that " 'this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.' " Southeastern Community College v. Davis, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting International Brotherhood of Teamsters v. Daniel, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)).
 
 
 11
 The source of the Secretary's interpretation of "against equity and good conscience" is unclear. The narrow interpretation is not necessarily supported by the Act or its legislative history, nor is it supported by the ordinary meaning of the phrase.
 
 
 12
 The Social Security Act is silent as to the meaning of the phrase against equity and good conscience. Unless otherwise defined, statutory words "will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The term equity "denotes the spirit and habit of fairness and justness." Gilles v. Department of Human Resources Development, 11 Cal.3d 313, 113 Cal.Rptr. 374, 521 P.2d 110, 116 n. 10 (Cal.1974) (quoting Black's Law Dictionary). The term conscience means "the sense of right or wrong * * * together with a feeling of obligation to do or be that which is recognized as good." Webster's Third New International Dictionary 482 (1981). The court in Gilles recognized that "against equity and good conscience" is "language of unusual generality." Gilles, 521 P.2d at 116, 113 Cal.Rptr. at 380. The court also recognized that such broad language "necessarily anticipate[s] that the trier of fact, instead of attempting to channelize his decision with rigid and specific rules, will draw upon precepts of justice and morality as the basis for his ruling." Id. The Secretary's interpretation does not reflect this common, ordinary meaning of the phrase.
 
 
 13
 Although the legislative history does not reveal the meaning of the phrase, it does indicate that Congress intended to make recovery more equitable by authorizing the Secretary to waive recovery in certain circumstances. H.R.Rep. No. 728, 76th Cong., 1st Sess. 19 (1939) ("Provision is made for making more equitable the recovery by the Federal Government of incorrect payments to individuals."); Hearings on Social Security before the House Committee of Ways and Means, 76th Cong., 1st Sess. 2287-88 (1939) (expressing concern over allowing recovery from persons who are "perfectly innocent of any wrong doing"); S.Rep. No. 744, 90th Cong., 1st Sess. 257 (1967), U.S.Code Cong. & Admin.News 1967, pp. 2834, 3096 ("The new subsection (b) of section 204 of the act broadens the Secretary's authority to waive adjustment or recovery of overpayments.").
 
 
 14
 Notwithstanding the deference given to administrative interpretations, we believe that the Secretary's definition of "against equity and good conscience" is unreasonably narrow. It cannot be said that the relinquishment of a valuable right and the changing of one's position for the worse represent the only circumstances in which recoupment would be inequitable. We find it difficult to imagine a more unfair or unjust situation than requiring a person who is without fault to repay overpaid benefits when that person had no knowledge of the overpayments. See United States v. Blackwell, 238 F.Supp. 342, 344-45 (D.S.C.1965) (although having found a change in position for the worse, the court emphasized the lack of knowledge in holding that recovery would be against equity and good conscience). Moreover, recoupment in this case would be inconsistent with the policy expressed in the legislative history--that recoupment should be equitable.
 
 
 15
 Substantial evidence in the record before us demonstrates that Groseclose had no knowledge of the overpayments. His daughter did not live at home during the time in question; she was living out of state. Groseclose testified that he did not know whether she was in school at the time or whether she was receiving benefits. He did not accept payments on her behalf. In addition, the record demonstrates that Groseclose was not at fault; the overpayments were not the result of an incorrect statement made by him, nor were they the result of a failure on his part to provide material information. Consequently, recoupment from Groseclose in these circumstances would be against equity and good conscience as that phrase is commonly understood.
 
 III. CONCLUSION
 
 16
 We reverse the district court's order granting summary judgment in favor of the Secretary. The Secretary is directed to reimburse any benefits that were withheld from Groseclose as a result of the Secretary's recoupment of overpayments.
 
 
 
 *
 The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation
 
 
 [1]
 There is no doubt that by spending his retirement benefits, Groseclose has changed his position for the worse. But the Secretary's definition requires that the person relinquish a valuable right or change his position for the worse "because of a notice that [the] payment would be made or by reason of the incorrect payment." 20 C.F.R. Sec. 404.509 (1986). The record demonstrates that Groseclose could not meet this standard because he was unaware that his daughter was receiving benefits
 Groseclose argued that he retired early, giving up the right to work until age sixty-five, in reliance on his belief that his daughter would be eligible to receive benefits that could be used for college tuition. The ALJ found, however, that the evidence demonstrated that he would have retired early regardless of whether his daughter would have been eligible for benefits. The evidence showed that Groseclose retired early to care for his ill wife and because he could not find work at the time.