Vincent MARCHESE, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. CIV-87-244C.

United States District Court,
W.D. New York.

July 26, 1988.

Serotte & Reich (Gerald P. Seipp, of counsel), Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (Jacqueline Stover, Sp. Asst. U.S. Atty., of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

Plaintiff was erroneously paid disability payments by defendant from October, 1977 through April, 1985. Plaintiff appeals from defendant's denial of plaintiff's application for a waiver of recovery of the overpayment. Tr. 62.

Plaintiff is a 60–year old man, who has not worked since 1974. Plaintiff came to the United States from Italy when he was 27 years old, and speaks limited English. He completed five grades of schooling in Italy. T. 37.

Plaintiff worked as a construction laborer until 1973, when he injured his back. He attempted to return to work in 1974, but again reinjured his back. Item 7. He filed an application for Social Security Disability benefits in 1974, which application was denied. He applied again in December, 1977, and that application was approved, establishing a disability onset date of April, 1977. Plaintiff disputed the onset date, and requested an administrative hearing. The Administrative Law Judge at that hearing, in reviewing the claim *de*

*novo,* determined that plaintiff was not entitled to benefits at all, reversing the earlier determination that plaintiff was entitled to benefits from April, 1977. Counsel for plaintiff appealed the ALJ's adverse decision to the Social Security Appeals Council. In the interim, plaintiff had begun receiving monthly Social Security disability payments, commencing in October, 1977. In October, 1979, the Appeals Council affirmed the adverse decision of the ALJ. Plaintiff testified that his counsel told him a further appeal would be taken, but then never communicated further with plaintiff. The record indicates that plaintiff's former counsel left practice in the Buffalo, New York area, where plaintiff resides, shortly after the Appeals Council decision in October, 1979, and apparently took plaintiff's file with him. T. 97. No further appeal was taken on plaintiff's behalf.[1]

Plaintiff continued to receive monthly payments after the Appeals Council decision. On April 19, 1985, plaintiff received a letter from defendant, advising plaintiff that the disability payments he had received since October, 1977 were overpayments, requiring reimbursement to defendant of $17,925.30. T. 59.

Plaintiff requested a waiver of the alleged overpayments on May 14, 1985. On February 25, 1986, plaintiff was informed that $2,623.70 of the original $17,925.30 would be waived, but that the remaining $15,301.60 could not be waived. Tr. 63–65. Plaintiff requested a hearing before an Administrative Law Judge, which was held on July 2, 1986. The ALJ Affirmed the denial of plaintiff's request for a waiver of recovery of the overpayment on July 14, 1986. The Appeals Council denied plaintiff's request for review on January 29, 1987.

DISCUSSION

Under the Social Security Act, whenever the Secretary finds that an overpayment of benefits has been paid to an individual, the recovery of the overpayment will be waived only if the recipient can show, first, that he is "without fault" in causing the overpayment, and second, that recovery would defeat the purpose of Title II of the Act or would be against equity and good conscience. 20 CFR § 404.506. *Center v. Schweiker,* 704 F.2d 678, 680 (2d Cir.1983); *Morgan v. Finch,* 423 F.2d 551, 553 (6th Cir.1970).

In this case, the Secretary found that plaintiff was without fault in causing the overpayment. Tr. 13. However, he also determined that recovery of the overpayment would not be against equity and good conscience or defeat the purposes of the Act. Tr. 13. He therefore held that plaintiff was liable for repayment of $15,-301.60.

Plaintiff now argues that recovery of this sum would be against equity and good conscience or would defeat the purposes of the Act.

The burden is upon the claimant to demonstrate that a recovery of overpayments would be "against equity and good conscience." *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037 (2d Cir.1984).

The Secretary's regulations state that recovery will be deemed to be against equity and good conscience if an individual, because of such payment, relinquished a valuable right or changed his or her position for the worse. In reaching such a determination, the individual's financial circumstances are irrelevant. 20 CFR 404.509.

Plaintiff cites *Groseclose v. Bowen,* 809 F.2d 502, 505 (8th Cir.1987) in support of his argument that the Secretary's definition of "against equity and good conscience" is too narrow. In *Groseclose,* the court stated:

> The source of the Secretary's interpretation of "against equity and good conscience" is unclear. The narrow interpretation is not necessarily supported by the Act or its legislative history, nor is it

---

1. There are many aspects that make this a most troublesome case. Not the least of which is the plaintiff's very limited education and his significant difficulty in understanding English, which is apparent from a reading of the transcript, the circumstances under which he relied upon an attorney to act for him, who failed to do so, and the fact that he continued to receive payments for an extended period of time before note was taken by the Administration.

supported by the ordinary meaning of the phrase.... The court in [citation omitted] recognized that "against equity and good conscience" is "language of unusual generality".... [which] "necessarily anticipates that the trier of fact, instead of attempting to channelize his decision with rigid and specific rules, will draw upon precepts of justice and morality for his ruling." [citation omitted].

\* \* \* \* \* \*

Notwithstanding the deference given to administrative interpretations, we believe that the Secretary's definition of against equity and good conscience is unreasonably narrow. It cannot be said that the relinquishment of a valuable right and the changing of one's position for the worse represent the only circumstances in which recoupment would be inequitable.

*Groseclose*, supra, at 505–506. Plaintiff contends that the continuing receipt of his benefits for six years following the adverse Appeals Council decision of non-disability, led him to conclude that something had been done by his attorney to preserve his prospective benefits. If he had not received these benefits, plaintiff argues that he might have participated in a vocational rehabilitation program, attempted less strenuous employment, or pursued a District Court appeal within the required 60 days. He therefore contends that it would be against equity and good conscience, especially under the more expansive reading of this term advocated by *Groseclose*, supra, for defendant to recover the overpayments made to him. Item 7, p. 8–9.

■ I agree with the court in *Groseclose* that the Secretary's definition of "against equity and good conscience," reflected in 20 CFR § 404.509, is unreasonably narrow; however, in the instant case, substantial evidence in the record supports the Secretary's determination, even under the more expansive interpretation of *Groseclose*. In *Groseclose*, the individual from whom recovery of overpayments was sought never received the overpaid benefits himself. Rather, his daughter was overpaid, and the Secretary withheld the father's benefits in order to recoup the overpayment. Substantial evidence in the record demonstrated that the father and daughter lived in different states during the overpayments, and the father had no knowledge of the overpayments, or even that the daughter was receiving benefits. *Groseclose*, supra, at 505–506. The court stated that it found it "difficult to imagine a more unfair or unjust situation than requiring a person who is without fault to repay overpaid benefits when that person had no knowledge of the overpayments." *Groseclose*, supra, at 506.

In the instant case, by contrast, plaintiff himself directly received all of the overpayments. The record demonstrates that plaintiff was directly notified of the adverse decision of the Appeals Council on October 5, 1979. T. 99. That notice informed plaintiff that the adverse decision was the final decision of the Secretary, and that he had the right to appeal the decision to the district court. *Id.* It is clear that any failure to appeal under these circumstances is wholly attributable to plaintiff or his freely selected agent, and not attributable to the Agency's erroneous overpayment of benefits. In general, plaintiff cites the consequences of the alleged failures of his former attorney in support of his position that it would be against equity and good conscience to recover the overpayments made to him. However plaintiff "cannot ... avoid the consequences of the acts or omissions of [his] freely selected agent," *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666–667 (1980), and this is not a proper basis for granting a waiver of repayment. The Secretary's determination that requiring repayment would not be against equity and good conscience is therefore supported by substantial evidence in the record.

■ Plaintiff also contends that recovery of the overpayments would defeat the purposes of Title II of the Act. To establish that a recovery would defeat the purposes of the act, the burden is upon the claimant to show that recovery would defeat the

purpose of benefits provided under Title II: that is, would deprive a person of income required for ordinary and necessary living expenses, such as fixed living expenses (including food and clothing, housing expenses, and insurance premiums), medical or hospitalization expenses, and other expenses which may resonably be considered part of the individual's standard of living. Recovery will be found to defeat the purpose of Title II where the overpaid individual needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses. 20 CFR § 404.508(b). The existence of such deprivation depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs. *Id.*

In this case, plaintiff submitted, as part of the Health and Human Services requested "Overpayment Recovery Questionnaire" an itemization of his income and expenses. T. 75. Plaintiff also testified to his income and expenses. T. 22–24. Plaintiff states that his income is derived from Workers Compensation benefits of $350.00 per month, plus $200.00 per month in rental income. He also has approximately $10,-000.00 in life savings, from which he derives interest income. Plaintiff states that he receives no Social Security benefits, nor income from any other source, and this is not contested by the Secretary. The record reflects no calculation of plaintiff's interest income from his savings. Assuming that plaintiff receives approximately 10% interest return (approximately $1,000.00 per year, or $82.50 per month), the record indicates that plaintiff's income from all sources is approximately $632.50 per month.

Plaintiff's itemization of his ordinary and necessary living expenses reflects expenses of $1,305.00 per month. T. 22–24, 75. The ALJ briefly questioned plaintiff as to how he was able to meet these expenses on an income of less than one-half the amount of his expenses. T. 26. Plaintiff's response indicates some confusion as to whether the itemized expenses reflect the expenses of plaintiff alone, or of plaintiff and his wife, who died a few months before plaintiff completed the "Overpayment Recovery Questionnaire." However, the issue of plaintiff's income relative to his expenses was not probed in any depth by the ALJ, despite the fact that this issue is central to determining whether recovery of the overpayments would defeat the purpose of Title II of the Act. *Id.* It is not clear whether the ALJ concluded that plaintiff's itemization of his expenses was not credible; if anything, the ALJ's decision appears to rely on that itemization, since he states "[t]he claimant indicated that there has been no significant change in his financial situation since he completed an "Overpayment Recovery Questionnaire" on August 30, 1985." T. 13.

In finding that recovery of the overpayment to plaintiff would not defeat the purposes of Title II of the Act, the ALJ cited only the fact that plaintiff has $10,-000.00 in savings. T. 13. This is not an adequate basis for determining that repayment would not defeat the purposes of the Act. In a similar situation, in *Velente v. Secretary of HHS*, 733 F.2d 1037 (2d Cir. 1984), in which the Secretary sought to recover an overpayment to a claimant, Mr. Valente, of approximately $20,000.00, the Court stated as follows:

"If, as to any ... overpayment, it is determined that Valente was without fault, he will be entitled to a waiver if he can also show either that repayment would defeat the purposes of the Act or that repayment would be against equity and good conscience. Both of these factors require a more careful consideration on remand than the ALJ appears to have given them at the prior hearing.

Section 404.508 of the Secretary's regulations states that requiring a refund would defeat the purposes of the Act when it would "deprive a person of income required for ordinary and necessary living expenses." The ALJ's decision ... gave no indication of the basis for his conclusion that repayments would not defeat the purposes of the Act. The ALJ observed that Mrs. Valente *had*

*about $10,000.00 in an IRA account. If this was intended either as a finding that $10,000 was available or as a ruling that a repayment of some $20,000 could be made without depriving the Valentes of income needed for ordinary and necessary living expenses, it was inadequate for those purposes."*

*Valente,* supra, at 1046 (emphasis added).

The ALJ's observation in the instant case that plaintiff has $10,000.00 in savings is similarly inadequate. The itemization of income and expenses provided by plaintiff and plaintiff's testimony on these matters obliged the ALJ to undertake "a more probing examination" of whether repayment would deprive plaintiff of the money needed for ordinary and necessary living expenses. *Id.*

I therefore find that this case should be remanded to the Secretary for more careful consideration of whether recovery from plaintiff of the entire sum overpaid would defeat the purpose of the Act. In doing so, I note again that the present record indicates that plaintiff's expenses already exceed his income. The Secretary should clearly indicate whether he relies upon this section of the record in his decision, or rejects it, and upon what basis. Further, I note that even if the Secretary determines that plaintiff's savings (and the interest thereon) is unnecessary for meeting plaintiff's usual monthly living expenses, and the entire sum of plaintiff's savings is deemed recoverable by defendant, plaintiff would remain over $5,000.00 in debt to defendant. The Secretary's decision is particularly silent as to how recovery from plaintiff of this remaining amount would not defeat the purpose of the Act, and this omission should be rectified, if necessary.

This case is therefore remanded to the Secretary for further administrative proceedings not inconsistent with this opinion.

So ordered.